# **EXHIBIT 1**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Goldcoast Liquidating, LLC, *et al.*,[1] | ) | Case No. 10–12819 (KG) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

---

## DISCLOSURE STATEMENT FOR DEBTORS'
## FIRST AMENDED JOINT PLAN OF LIQUIDATION

---

Dated: August ____, 2011

MILBANK, TWEED, HADLEY & MCCLOY LLP
Robert Jay Moore (CA Bar No. 77495)
Haig M. Maghakian (CA Bar No. 221954)
Julian I. Gurule (CA Bar No. 252160)
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017-5735
Telephone: 213-892-4000
Facsimile: 213-629-5063
Email: rmoore@milbank.com
　　　 hmaghakian@milbank.com
　　　 jgurule@milbank.com

and

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (DE Bar No. 2436)
Curtis Hehn (DE Bar No. 4264)
919 North Market Street, 17th Floor
P.O. Box 8705
(Courier Route 19801)
Wilmington, DE 19898
Telephone: 302-652-4100
Facsimile: 302-652-4400
E-mail: ljones@pszjlaw.com
　　　 chehn@pszjlaw.com

Counsel for Debtors and Debtors in Possession

---

[1]　The Debtors in these cases, together with the last four digits of each of the Debtors' federal tax identification numbers, are: Goldcoast Liquidating, LLC (f/k/a Claim Jumper Restaurants, LLC) (1053) and Goldcoast Management Liquidating, LLC (f/k/a Claim Jumper Management, LLC) (6481). The Debtors' headquarters and mailing address is: 19200 Von Karman Avenue, Suite 400, Irvine, CA 92612.

**PLEASE REVIEW THIS DOCUMENT FOR IMPORTANT INFORMATION REGARDING:**

* Description of the Debtors

* Classification and Treatment of Claims and Interests

* Distribution to Holders of Secured Lender Claims

* Distribution to Holders of Allowed General Unsecured Claims

* Implementation and Execution of the Plan

* Treatment of Contracts and Leases and Procedures to Assert and Resolve Rejection Claims

**IMPORTANT DATES:**

* Date to Determine Record Holders of Claims and Interests – _____, 2011

* Deadline to Submit Ballots – _____, 2011 at 4:00 p.m. (prevailing Pacific Time)

* Deadline to Object to Plan Confirmation – _____, 2011 at 4:00 p.m. (prevailing Eastern Time)

* Hearing on Plan Confirmation– _____, 2011 at 10:00 a.m. (prevailing Eastern Time)

**YOU ARE RECEIVING THIS DISCLOSURE STATEMENT, THE PLAN, AND THE BALLOT (COLLECTIVELY, THE "SOLICITATION PACKAGE") BECAUSE YOU HAVE THE RIGHT TO VOTE TO ACCEPT OR REJECT THE PLAN. PLEASE REVIEW THIS DISCLOSURE STATEMENT AND THE PLAN AND COMPLETE AND RETURN THE BALLOT IN ACCORDANCE WITH THE INSTRUCTIONS CONTAINED HEREIN AND IN THE BALLOT.**

**A COPY OF THIS DISCLOSURE STATEMENT AND THE PLAN CAN BE FOUND AT http:// kccllc.net/claimjumper.**

1. **INTRODUCTION**

1.1. **Purpose of the Disclosure Statement**.

Notice of this Disclosure Statement is being provided by Debtors Goldcoast Liquidating, LLC, (f/k/a Claim Jumper Restaurants, LLC), and Goldcoast Management Liquidating, LLC, (f/k/a Claim Jumper Management, LLC), to, among others, the Office of the United States Trustee, the Securities and Exchange Commission, and, subject to the Disclosure Statement Order (defined below), all Holders of Claims in the Voting Classes pursuant to section 1125(b) of the Bankruptcy Code for the purpose of soliciting acceptances of the Plan. The Plan has been filed with the Bankruptcy Court and the summaries of the Plan contained herein shall not be relied upon for any purpose other than to make a judgment with respect to, and determine how to vote on, the Plan. A copy of the Plan is attached hereto as **Exhibit A**. All capitalized terms used within this Disclosure Statement that are not defined herein have the meanings set forth in the Plan. **By Order [_____] dated _____, 2011, the Disclosure Statement was approved by the Bankruptcy Court as containing "adequate information" under Bankruptcy Code section 1125 (the "Disclosure Statement Order"). The deadline to object to Plan Confirmation is _____, 2011, at 4:00 p.m. (prevailing Eastern Time).**

PLEASE NOTE THAT MUCH OF THE INFORMATION CONTAINED HEREIN HAS BEEN TAKEN, IN WHOLE OR IN PART, FROM INFORMATION CONTAINED IN THE DEBTORS' BOOKS AND RECORDS AND PLEADINGS FILED BY THE DEBTORS WITH THE BANKRUPTCY COURT. STATEMENTS MADE IN THE DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN. ALTHOUGH THE DEBTORS HAVE ATTEMPTED TO BE ACCURATE IN ALL MATERIAL RESPECTS, THE DEBTORS ARE UNABLE TO REPRESENT OR WARRANT THAT ALL OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT ERROR. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND BANKRUPTCY RULE 3016 AND NOT NECESSARILY IN COMPLIANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER RULES GOVERNING DISCLOSURE OUTSIDE THE CONTEXT OF CHAPTER 11. THIS DISCLOSURE STATEMENT HAS NEITHER BEEN APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION PASSED UPON ITS ACCURACY.

NO REPRESENTATION CONCERNING THE DEBTORS OR THE VALUE OF THE DEBTORS' ASSETS HAS BEEN AUTHORIZED BY THE BANKRUPTCY COURT OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. THE DEBTORS ARE NOT RESPONSIBLE FOR ANY INFORMATION, REPRESENTATION OR INDUCEMENT MADE TO OBTAIN YOUR ACCEPTANCE, WHICH IS OTHER THAN, OR INCONSISTENT WITH, INFORMATION CONTAINED HEREIN AND IN THE PLAN.

YOU ARE STRONGLY URGED TO CONSULT WITH YOUR FINANCIAL, LEGAL AND TAX ADVISORS TO UNDERSTAND FULLY THE PLAN AND DISCLOSURE STATEMENT. THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS GIVEN AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFIED. THE DELIVERY OF THIS

DISCLOSURE STATEMENT DOES NOT, UNDER ANY CIRCUMSTANCE, IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE SUCH DATE. THIS DISCLOSURE STATEMENT IS INTENDED, AMONG OTHER THINGS, TO SUMMARIZE THE PLAN AND MUST BE READ IN CONJUNCTION WITH THE PLAN AND ITS EXHIBITS, IF ANY. IF ANY CONFLICTS EXIST BETWEEN THE PLAN AND DISCLOSURE STATEMENT, THE TERMS OF THE PLAN SHALL CONTROL.

IF A HOLDER OF A CLAIM WISHES TO CHALLENGE THE ALLOWANCE OR DISALLOWANCE OF A CLAIM FOR VOTING PURPOSES UNDER THE TABULATION RULES SET FORTH IN THE DISCLOSURE STATEMENT ORDER, SUCH ENTITY MUST FILE A MOTION, PURSUANT TO BANKRUPTCY RULE 3018(A), FOR AN ORDER TEMPORARILY ALLOWING SUCH CLAIM IN A DIFFERENT AMOUNT OR CLASSIFICATION FOR PURPOSES OF VOTING TO ACCEPT OR REJECT THE PLAN AND SERVE SUCH MOTION ON THE UNDERSIGNED COUNSEL TO THE DEBTORS AND COUNSEL TO THE CREDITORS' COMMITTEE SO THAT IT IS RECEIVED NO LATER THAN **4:00 P.M., PREVAILING EASTERN TIME, ON** _____**, 2011**. THE DEBTORS AND THE CREDITORS' COMMITTEE SHALL HAVE UNTIL _____, 2011 TO FILE AND SERVE ANY RESPONSES TO SUCH MOTIONS. UNLESS THE BANKRUPTCY COURT ORDERS OTHERWISE, SUCH CLAIM WILL NOT BE COUNTED FOR VOTING PURPOSES IN EXCESS OF THE AMOUNT DETERMINED IN ACCORDANCE WITH THE TABULATION RULES.

1.2. **Definitions of Terms Utilized in the Plan**. Unless the context otherwise requires or a term is defined within the Plan itself, the following terms shall have the respective meanings set forth below, except as expressly provided otherwise.

1.2.1. **Adequate Protection Superpriority Claim**: "Adequate Protection Superpriority Claim" shall have the meaning assigned to such term in the DIP Order.

1.2.2. **Administrative Expense Claim**: Any cost or expense of administration of the Cases allowed pursuant to Bankruptcy Code section 503(b), excluding Professional Fee Claims and Pre-Sale Closing Administrative Expense Claims.

1.2.3. **Allowed**: A Claim or Interest will be "Allowed" if: (a) (i) such Claim or Interest is identified in the Schedules and not listed therein as disputed (whether in amount, priority or otherwise), contingent or unliquidated as to amount, and (ii) with respect to such Claim or Interest, no proof of claim or interest, as applicable, has been Filed, or (b) with respect to such Claim or Interest, a proof of claim or interest, as applicable, has been timely Filed, in the amount and of the classification asserted in such proof of claim or interest, as applicable; but in the case of either (a) or (b), only if (x) such Claim or Interest has not already been satisfied, (y) no objection to the allowance of such Claim or Interest has been Filed by the Claims Objection Deadline (as defined in the Plan), or (z) such Claim or Interest has otherwise been allowed by a Final Order. The following types of Claims or Interests shall not be "Allowed": (i) untimely Filed Claims or, with respect to administrative expenses, requests for payment made after the Pre-Sale Closing Administrative Expense Bar Date or the Post-Sale Closing Administrative Expense Bar Date, as applicable, (ii) interest on the principal amount of the Allowed Claim from and after the Petition Date, (iii) any punitive damages, or (iv) Claims which are assumed liabilities pursuant to the Asset Purchase Agreement.

1.2.4. **Allowed Class I Claim**: An Allowed Claim in Class I.

1.2.5. **Allowed Class II Claim**: An Allowed Claim in Class II.

1.2.6.    **Allowed Class III Claim**: An Allowed Claim in Class III.

1.2.7.    **Allowed Class IV Claim**: An Allowed Claim in Class IV.

1.2.8.    **Allowed Class V Claim**: An Allowed Claim in Class V.

1.2.9.    **Allowed Class VI Interest**: An Allowed Interest in Class VI.

1.2.10.  **Allowed Subordinated Note Claim**: "Allowed Subordinated Note Claim" shall have the meaning ascribed to that term in the Section 3.4.

1.2.11.  **Assets**: Any and all right, title, and interest of any of the Debtors in and to property of whatever type or nature.

1.2.12.  **Asset Purchase Agreement**: That certain Asset Purchase Agreement, dated as of October 28, 2010, among Landry's Holdings, Inc., Landry's Restaurants, Inc., Claim Jumper Restaurants, LLC and Claim Jumper Management, LLC, as amended, modified, supplemented or restated from time to time (consistent with the rights of the Prepetition Secured Parties under the DIP Order and the Sale Order).

1.2.13.  **Assumed Obligations**: Certain liabilities of the Debtors assumed by the Buyer pursuant to section 1.4(a) of the Asset Purchase Agreement (and defined in section 11.2 of the Asset Purchase Agreement) and the Sale Order.

1.2.14.  **Auction**: "Auction" shall have the meaning ascribed to that term in Section 2.4 of this Disclosure Statement.

1.2.15.  **Avoidance Actions**: Any and all actions, proceedings, accounts, controversies, agreements, promises, claims, and rights of each Debtor and its estate to avoid or recover a transfer of property of any of the Debtors' estates or an interest of any of the Debtors in property, including, without limitation, actions arising under Bankruptcy Code sections 506, 510, 541, 542, 544, 545, 547, 548, 549, 550 and 553 and any other applicable federal, state or common law, including fraudulent transfers or conveyances whether or not litigation has been commenced with respect to such actions, proceedings, accounts, controversies, agreements, promises, claims and rights as of the Effective Date, but excluding (a) the GUC Avoidance Actions, (b) any Avoidance Actions assigned to the Buyer or satisfied by the Debtors or the Buyer (in full or in an agreed or compromised amount) in connection with the Sale, (c) any Avoidance Actions previously waived by the Debtors pursuant to any Final Order; and (d) any Avoidance Actions against the Holders of the Subordinated Note Claims (including, but not limited to, the Prepetition Secured Parties) and the Prepetition Secured Parties.

1.2.16.  **Ballots**: The ballots accompanying the Disclosure Statement upon which certain Holders of Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan.

1.2.17.  **Balloting Agent**: Kurtzman Carson Consultants LLC, or such other entity determined by the Debtors in consultation with the Creditors' Committee.

1.2.18.  **Bankruptcy Code**: Title 11 of the United States Code, as in effect on the Petition Date and as thereafter amended, if such amendments are made applicable to the Cases.

1.2.19. **Bankruptcy Court**: The United States Bankruptcy Court for the District of Delaware, or in the event such court ceases to exercise jurisdiction over any Case, such court or adjunct thereof that exercises jurisdiction over such Case in lieu of the United States Bankruptcy Court for the District of Delaware.

1.2.20. **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure pursuant to Title 28 of the United States Code, 28 U.S.C. §§ 2075, as they have been or may hereafter be amended.

1.2.21. **Bid Procedures Motion**: "Bid Procedures Motion" shall have the meaning ascribed to that term in Section 2.4 of this Disclosure Statement.

1.2.22. **Bid Procedures Order**: "Bid Procedures Order" shall have the meaning ascribed to that term in Section 2.4 of this Disclosure Statement.

1.2.23. **Business Day**: Any day except a Saturday, Sunday or any day on which commercial banks in the State of Delaware are authorized or required by applicable law to close.

1.2.24. **Buyer**: Landry's Holdings, Inc., Landry's Restaurants, Inc., and their designee, Fertitta Entertainment, LLC.

1.2.25. **Case**: With respect to each Debtor, the chapter 11 case initiated by such Debtor's Filing on the Petition Date of a voluntary petition for relief in the Bankruptcy Court under chapter 11 of the Bankruptcy Code (collectively, the "**Cases**"). The Cases are being jointly administered in the Bankruptcy Court as Bankruptcy Case No. 10-12819 (KG) pursuant to the *Order Directing Joint Administration of Related Chapter 11 Cases* [Docket No. 40].

1.2.26. **Cash**: Legal tender of the United States of America and equivalents thereof.

1.2.27. **Causes of Action**: Any and all claims, causes of action (including Avoidance Actions), demands, actions, suits, obligations, liabilities, cross-claims, counter-claims, offsets, or setoffs of any kind or character whatsoever, in each case whether known or unknown, liquidated or unliquidated, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in contract, in tort, in law, or in equity, or pursuant to any other theory of law, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counter-claim, cross-claim, third party action, action for indemnity or contribution or otherwise, based in whole or in part upon any act or omission or other event occurring at any time prior to the Effective Date.

1.2.28. **Chapter 7**: Chapter 7 of the Bankruptcy Code.

1.2.29. **Claim**: A "claim" as defined in Bankruptcy Code section 101(5), against one or both of the Debtors whether or not asserted or Allowed.

1.2.30. **Class**: A category of Claims or Interests designated pursuant to the Plan.

1.2.31. **Class I Claim**: A Claim classified in Class I.

1.2.32. **Class II Claim**: A Claim classified in Class II.

1.2.33. **Class III Claim**: A Claim classified in Class III.

1.2.34. **Class IV Claim**: A Claim classified in Class IV.

1.2.35. **Class V Claim**: A Claim classified in Class V.

1.2.36. **Class VI Interest**: An Interest classified in Class VI.

1.2.37. **Closing Date**: December 6, 2010, the date on which the Debtors and the Buyer closed the Sale.

1.2.38. **Committee Claim Objection**: The Objection of the GUC Trustee and the Official Committee of Unsecured Creditors to Claim Numbers 207, 208 and 211 filed by Private Capital Partners LLC and Black Canyon Capital LLC [Docket No. 604].

1.2.39. **Confirmation**: Entry by the Bankruptcy Court of the Confirmation Order.

1.2.40. **Confirmation Date**: The date upon which the Confirmation Order is entered by the Bankruptcy Court.

1.2.41. **Confirmation Hearing**: Collectively, the hearing or hearings held by the Bankruptcy Court on confirmation of the Plan, as such hearing or hearings may be continued from time to time.

1.2.42. **Confirmation Order**: The Order of the Bankruptcy Court confirming the Plan.

1.2.43. **Creditor**: Holder of a Claim.

1.2.44. **Creditors' Committee**: The official committee of unsecured creditors of the Debtors appointed by the United States Trustee in the Cases pursuant to Bankruptcy Code section 1102 as its composition may be changed from time to time by addition, resignation or removal of its members.

1.2.45. **Debtor**: Individually, each of Goldcoast Liquidating, LLC (f/k/a Claim Jumper Restaurants, LLC) and Goldcoast Management Liquidating, LLC (f/k/a Claim Jumper Management, LLC), each of which is a Debtor in its Case (together, the "**Debtors**").

1.2.46. **DIP Credit Agreement**: The Senior Secured Superpriority Debtor-in-Possession Credit Agreement, dated September 17, 2010.

1.2.47. **DIP Motion**: The Debtors' motion for entry of the DIP Order, filed on September 17, 2010 [Docket No. 84].

1.2.48. **DIP Order**: The Bankruptcy Court's *Order Authorizing Claim Jumper Restaurants, LLC and Claim Jumper Management, LLC to (A) Obtain Post-Petition Secured Financing Pursuant to Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(d)(1), and 364(e), (B) Continue to Use Case Collateral Pursuant to 11 U.S.C. § 363, and (C) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 363 and 364 of the Bankruptcy Code*, entered on October 19, 2010 [Docket No. 271].

1.2.49. **DIP Parties**: The agent and lenders under the DIP Credit Agreement.

1.2.50. **Disallowed**: A Claim or Interest or any portion thereof that is not Allowed.

1.2.51. **Disclosure Statement**: This "Disclosure Statement for Debtors' First Amended Joint Plan of Liquidation", dated August [___], 2011, as amended, modified, or supplemented.

1.2.52. **Disclosure Statement Order**: "Disclosure Statement Order" shall have the meaning ascribed to that term in Section 1.1 of this Disclosure Statement.

1.2.53. **Disputed Claim**: Any Claim: (i) proof of which has been Filed to which an objection to the allowance thereof has been Filed by the Claims Objection Deadline (as defined in the Plan), and such objection has not been either (a) determined by a Final Order or (b) settled by the parties under a settlement approved by Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019; (ii) which has not been otherwise Allowed; or (iii) which is identified in the Schedules as contingent, unliquidated and/or disputed and as to which (a) no proof of claim has been timely Filed or (b) in the case of a timely Filed proof of claim, an objection to such proof of claim has been filed but has not yet been resolved by a Final Order.

1.2.54. **Effective Date**: The date that is the first Business Day, as defined in the Plan, on which each condition set forth in Article IV of the Plan has been satisfied or waived as set forth therein.

1.2.55. **Estates**: The bankruptcy estates of the Debtors created by virtue of Bankruptcy Code section 541 upon the commencement of the Cases.

1.2.56. **File, Filed or Filing**: File, filed or filing with the Bankruptcy Court or its authorized designee in the Cases.

1.2.57. **Final Decree**: The Order entered pursuant to Bankruptcy Code section 350, Bankruptcy Rule 3022, and Local Rule 5009-1 closing the Cases.

1.2.58. **Final Decree Certification**: "Final Decree Certification" shall have the meaning ascribed to that term in Section 3.10.2 of this Disclosure Statement.

1.2.59. **Final Order**: An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or resulted in no modification of such order; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order shall not cause such order not to be a Final Order.

1.2.60. **First Day Motions**: "First Day Motions" shall have the meaning ascribed to that term in Section 2.3 of this Disclosure Statement.

1.2.61. **General Unsecured Claim**: Any Claim against a Debtor which is not an Other Secured Claim, a Secured Lender Secured Claim, an Administrative Expense Claim, a Priority Claim, a Priority Tax Claim, a Professional Fee Claim, an Intercompany Claim, or an Interest.

1.2.62. **GUC Avoidance Actions**: Any Avoidance Action against Holders of General Unsecured Claims against the Debtors as of the Petition Date that were not (a) assumed or acquired by the Buyer in connection with the Sale, (b) satisfied (whether in full or in an agreed or compromised amount) by the Debtors or the Buyer in connection with the Sale, or (c) waived pursuant to a Final Order;

*provided, however*, that the GUC Avoidance Actions shall not include any Avoidance Actions against the Holders of the Subordinated Note Claims (including, but not limited to, the Prepetition Secured Parties) or the Prepetition Secured Parties.

1.2.63. **GUC Trust**: The trust established pursuant to the GUC Trust Agreement among Goldcoast Liquidating, LLC, Goldcoast Management Liquidating, LLC, the Creditors' Committee, and Sean Southard, Esq., dated as of February 8, 2011 for the sole benefit of the Holders of Allowed General Unsecured Claims, provided that, notwithstanding anything to the contrary in the GUC Trust Documents, the GUC Trustee shall give notice and make distributions to the Prepetition Agent with respect to amounts received by the GUC Trust on account of the GUC Avoidance Actions in accordance with the Plan.

1.2.64. **GUC Trust Documents**: The agreements and documents, as filed with the Bankruptcy Court on February 18, 2011 [Docket No. 538], creating and establishing the GUC Trust in accordance with the terms and provisions of the DIP Order.

1.2.65. **GUC Trust Funds**: $1,835,070 in Cash.

1.2.66. **GUC Trust Stipulation**: That certain *Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Wells Fargo Bank, National Association, as Prepetition Agent and DIP Agent* dated as of November 9, 2010 [Docket No. 84], which, as of the filing of this Disclosure Statement, has not been approved by the Court.

1.2.67. **GUC Trustee**: Sean Southard, Esq., who will serve as the trustee of the GUC Trust.

1.2.68. **Holder**: The Person that is the owner of record of a Claim or Interest, as applicable.

1.2.69. **Impaired**: As such term is defined in Bankruptcy Code section 1124.

1.2.70. **Intercompany Claim**: Any Claim by a Debtor against the other Debtor.

1.2.71. **Interest**: Either (i) the legal, equitable, contractual or other rights of any Person with respect to the preferred stock, common stock, limited liability company interests or any other equity interest in any of the Debtors, including any other interest in or right to convert into such equity interest, or (ii) the legal, equitable, contractual or other right of any Person to acquire or receive any of the foregoing.

1.2.72. **LGP**: Leonard Green & Partners, L.P., LGP Management, Inc., Green Equity Investors IV, L.P., Gold Rush Coinvest, LLC, and any Related Person of the foregoing.

1.2.73. **Litigation Claims**: Claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that any Debtor or Estate may hold against any Person, including, without limitation, the Causes of Action of the Debtors.

1.2.74. **Local Rules**: The Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, as amended from time to time.

1.2.75. **Noticing Agent Website**: *http://kccllc.net/claimjumper*.

**1.2.76. Order**: An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Case or the docket of any other court of competent jurisdiction.

**1.2.77. Other Secured Claim**: Either (i) a Claim, other than the Secured Lender Secured Claim, that is secured by a lien on property in which the Debtors have an interest, which lien is valid, perfected and enforceable under applicable law or pursuant to a Final Order, or that is subject to setoff under Bankruptcy Code section 553, to the extent of the value of the Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, all as determined pursuant to Bankruptcy Code section 506(a); or (ii) a Claim, other than a Secured Lender Claim, which is Allowed under the Plan as a secured claim.

**1.2.78. Person**: An individual, limited liability company, corporation, partnership, association, trust or unincorporated organization, joint venture or other person or a government or any agency or political subdivision thereof.

**1.2.79. Petition Date**: September 10, 2010, the date on which the Debtors Filed their respective petitions for relief in the Bankruptcy Court.

**1.2.80. Plan**: The Debtors' First Amended Joint Plan of Liquidation, dated as of August [___], 2011, as the same may hereafter be amended, modified or supplemented.

**1.2.81. Post-Sale Closing Administrative Expense Bar Date**: The date that is thirty (30) days after the Effective Date of the Plan.

**1.2.82. Pre-Sale Closing Administrative Expense Claims**: Claims by Creditors (i) for administrative expenses arising after the Petition Date and before the Closing Date of the Sale (excluding only tort-based claims, if any, of employees and customers who are not notified of the Pre-Sale Closing Administrative Expense Bar Date) or (ii) pursuant to Bankruptcy Code section 503(b)(9), and, in the case of both (i) and (ii), subject to the Pre-Sale Closing Administrative Expense Claims Bar Date. For the avoidance of doubt, "Pre-Sale Closing Administrative Expense Claims" do not include the Adequate Protection Superpriority Claim or the DIP Superpriority Claim (as defined in the DIP Order).

**1.2.83. Pre-Sale Closing Administrative Expense Claim Bar Date**: February 2, 2011, the deadline by which all Pre-Sale Closing Administrative Expense Claims had to be delivered to the Debtors pursuant to the *Order Establishing Deadline for Filing Requests for Payment of Post-Petition, Pre-Closing Administrative Expenses and Section 503(b)(9) Claims and Approving Form and Manner of Notice Thereof* [Docket No. 487].

**1.2.84. Prepetition Agent**: Wells Fargo Bank, National Association, and any successor thereto, in its capacity as the administrative agent under the Prepetition Credit Agreement.

**1.2.85. Prepetition Credit Agreement**: That certain Credit Agreement, dated October 28, 2005, between Claim Jumper Restaurants, LLC, Wells Fargo Bank, National Association, as administrative agent and lender, and GE Franchise Finance and Bank of the West, as lenders, as amended, modified, supplemented or restated from time to time.

**1.2.86. Prepetition Credit Documents**: The Prepetition Credit Agreement and the various loan documents related thereto.

1.2.87. **Prepetition Secured Parties**: The Prepetition Agent and each Holder of a participation under the Prepetition Credit Agreement (each solely in such capacity).

1.2.88. **Priority Claim**: A Claim that is entitled to priority under Bankruptcy Code section 507(a), other than an Administrative Expense Claim and a Priority Tax Claim.

1.2.89. **Priority Tax Claim**: A Claim that is entitled to priority under Bankruptcy Code section 507(a)(8).

1.2.90. **Pro Rata**: The proportion that (a) the Allowed principal amount of a Claim in a particular Class bears to (b) the aggregate amount of all Allowed Claims in such Class.

1.2.91. **Professional**: Any professional employed in the Cases pursuant to Bankruptcy Code sections 327, 328 or 1103 or any professional or other Person seeking compensation or reimbursement of expenses in connection with the Cases pursuant to Bankruptcy Code section 503(b)(4).

1.2.92. **Professional Fee Claim**: A Claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred during the period from the Petition Date through the Effective Date, which, in the case of professionals of the Debtors, the Creditors' Committee and GRP Acquisition Corp., shall not exceed the Carve-Out and the Budget (as defined in the DIP Order) without the prior written consent of the Prepetition Agent.

1.2.93. **Professional Fee Claim Bar Date**: The date that is sixty (60) days after the Effective Date.

1.2.94. **Record Date**: The Record Date shall be the date that the Plan is Filed.

1.2.95. **Record Holder**: The Holder of an Interest or Claim as of the Record Date.

1.2.96. **Related Persons**: With respect to any Person, such Person's current and former officers, directors, principals, employees, partners, members, managers, shareholders, affiliates, subsidiaries, advisors, attorneys, accountants, consultants, representatives, financial advisors, investment bankers, investors, nominees, management companies, fund advisors, or agents and any of such parties' predecessors, executors, estates, successors and assigns. For the avoidance of doubt, Related Persons of Black Canyon Capital, LLC and Private Capital Partners, LLC shall include Canyon Private Funding Company, LLC, Stanley Stein and Thomas Paccioretti.

1.2.97. **Released Party**: (a) the Debtors and their respective Estates; (b) LGP (solely in its capacity as a direct or indirect investor, potential investor, or equity holder in the Debtors or person in control of the Debtors); (c) each of the Prepetition Secured Parties, (d) each of the DIP Parties (but solely in their capacity as DIP Parties); (e) the Creditors' Committee and its members (but solely in their capacity as Creditors' Committee members); (f) each of Black Canyon Capital, LLC and Private Capital Partners, LLC (solely in their capacity as a direct or indirect investor or equity holder in the Debtors or person in control of the Debtors, or a party exercising remedies, or a Holder of a Subordinate Note Claim or as a Related Person); and (g) the respective Related Persons of each of the foregoing entities (solely in such capacity and to the extent provided with respect to each party in (a)-(f)).

1.2.98. **Releasing Party**: (a) the Debtors and their respective Estates; (b) LGP; (c) each of the Prepetition Secured Parties (solely in their capacities as lenders to the Debtors or as administrative agent for such lenders), (d) each of the DIP Parties (but solely in their capacity as DIP Parties); (e) the Creditors' Committee and its members (but solely in their capacity as Creditors' Committee members);

(f) each of Black Canyon Capital, LLC and Private Capital Partners, LLC (solely in their capacity as a direct or indirect investor or equity holder in the Debtors or person in control of the Debtors, or a party exercising remedies, or a Holder of a Subordinated Note Claim, or as a Related Person); and (g) the respective Related Persons of each of the foregoing entities (solely in such capacity and to the extent provided by each party in (a)-(f)).

1.2.99. **Retained Causes of Action**: Any Causes of Action that are property of the Debtors or their Estates, including, without limitation, (i) any and all Causes of Action related to the actions, lawsuits and proceedings listed in the Debtors' respective Schedules and statements of financial affairs, and (ii) any Avoidance Action; *provided, that*, "Retained Causes of Action" shall not include (w) any Causes of Action assigned to the Buyer or satisfied by the Debtors or the Buyer (in full or in an agreed or compromised amount) in connection with the Sale, (x) the GUC Avoidance Actions, (y) any Causes of Action previously waived by the Debtors pursuant to any Final Order, and (z) any Causes of Action that are released, waived, voided, discharged or waived pursuant to Section 5.15 or 5.16 of this Plan.

1.2.100. **Sale**: Pursuant to the Asset Purchase Agreement and the Sale Order, the sale by the Debtors to the Buyer of the Transferred Assets (as defined in the Asset Purchase Agreement), consisting of substantially all of the Debtors' Assets, and the assumption by the Buyer of the Assumed Obligations, as both terms are defined in the Asset Purchase Agreement.

1.2.101. **Sale Motion**: "Sale Motion" shall have the meaning ascribed to that term in Section 2.4 of this Disclosure Statement.

1.2.102. **Sale Order**: The Bankruptcy Court's *Order Under 11 U.S.C. §§ 105(a), 363 and 365 and Fed. R. Bankr. P. 2002, 6004 and 6006 Authorizing and Approving (A) the Sale of Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases to Successful Bidder(s) at Auction*, entered on November 4, 2010 [Docket No. 334].

1.2.103. **Scheduled Claim**: Any Claim set forth on the Schedules.

1.2.104. **Schedules**: With respect to any Debtor, the Schedules of Assets and Liabilities Filed by such Debtor, as such Schedules may be amended from time to in accordance with Bankruptcy Rule 1009.

1.2.105. **Secured Lender Claim**: (i) Any Claim arising under the Prepetition Credit Agreement and (ii) the Adequate Protection Superpriority Claim.

1.2.106. **Special Causes of Action**: Any and all Claims, Causes of Action, Litigation Claims, Avoidance Actions, and any other legal or equitable remedies against any Person arising from any transaction comprising or relating to the transactions that occurred in October 2005 pursuant to which, among other things LGP acquired indirect ownership of the Debtors, regardless of whether such Claims, Causes of Action, Litigation Claims, Avoidance Actions, or other remedies may be asserted pursuant to the Bankruptcy Code or any other applicable law.

1.2.107. **Subordinated Note Claim**: A Claim against the Debtors that arises under the Subordinated Note Purchase Agreement.

1.2.108. **Subordinated Note Purchase Agreement**: That certain Note Purchase Agreement, dated as of October 28, 2005, between Claim Jumper Restaurants Holding Corp., Gold Rush

Purchase Corp., Claim Jumper Restaurants, LLC, Claim Jumper Management, LLC, and certain other parties thereto.

1.2.109.**Subordinated Note Agreement**: "Subordinated Note Agreement" shall have the meaning ascribed to such term in section 3.4 of this Disclosure Statement.

1.2.110.**Subordination Dispute**: "Subordination Dispute" shall have the meaning ascribed to such term in section 3.4 of this Disclosure Statement.

1.2.111.**Unclassified Claims**: Claims which, pursuant to Bankruptcy Code section 1123(a)(1), shall not be placed into a Class. Unclassified Claims include Administrative Expense Claims, Professional Fee Claims, Pre-Sale Closing Administrative Expense Claims and Priority Tax Claims.

1.2.112.**Unimpaired**: With respect to a Class of Claims or Interests, any Class that is unimpaired within the meaning of Bankruptcy Code section 1124.

1.2.113.**United States Trustee**: The Office of the United States Trustee for the District of Delaware.

1.2.114.**Voting Class**: A Class that is Impaired and entitled to vote on the Plan.

1.3.    **Final Approval of the Disclosure Statement and Confirmation of the Plan**.

1.3.1.    **Requirements.** The requirements for Confirmation of the Plan are set forth in Bankruptcy Code section 1129. The requirements for the Disclosure Statement are set forth in Bankruptcy Code section 1125.

1.3.2.    **Confirmation Hearing.** To confirm the Plan, the Bankruptcy Court must hold the Confirmation Hearing to determine whether the Plan meets the requirements of Bankruptcy Code section 1129. The Bankruptcy Court has set [_____], at [_____] __.m. (prevailing **Eastern Time**), for the Confirmation Hearing.

1.3.3.    **Deadline to Object to Confirmation of the Plan. Any party in interest may object to the Confirmation of the Plan and appear at the Confirmation Hearing to pursue such objection. The Bankruptcy Court has set _____, 2011, at _:__ p.m. (prevailing Eastern Time), as the deadline for filing and serving objections to the Confirmation of the Plan.** Objections to Confirmation must be electronically Filed with the Bankruptcy Court and served on counsel to the Debtors, the U.S. Trustee and counsel to the Creditors' Committee.

1.3.4.    **Effect of Confirmation.** Confirmation serves to make the Plan binding upon the Debtors, all Creditors, Interest Holders and other parties-in-interest, regardless of whether they cast a Ballot to accept or reject the Plan.

1.4.    **Voting on the Plan**.

1.4.1.    **Impaired Claims or Interests.** Pursuant to Bankruptcy Code section 1126, only the Holders of Claims in Classes "Impaired" by the Plan and receiving a payment or distribution under the Plan may vote on the Plan. Pursuant to Bankruptcy Code section 1124, a Class of Claims may be "Impaired" if the Plan alters the legal, equitable or contractual rights of the Holders of such Claims or Interests in such Class. The Holders of Claims not Impaired by the Plan (Class I – Allowed Other Secured Claims and Class III – Allowed Priority Claims) are deemed to accept the Plan and do not have

the right to vote on the Plan. The Holders of Claims or Interests in any Class which will not receive any payment or distribution or retain any property pursuant to the Plan (Class V – Intercompany Claims and Class VI – Interests) are deemed to reject the Plan and do not have the right to vote.

1.4.2. **Eligibility to Vote on the Plan**. Unless otherwise ordered by the Bankruptcy Court, only Record Holders of Allowed Class II Claims and Allowed Class IV Claims may vote on the Plan.

1.4.3. **Voting Procedure and Ballot Deadline**. To ensure that your vote is counted you must (i) complete the Ballot, (ii) indicate your decision either to accept or reject the Plan in the Ballot, and (iii) sign and return the Ballot to the address set forth on the Ballot (please note that envelopes and prepaid postage have not been included with the Ballot). **BALLOTS SENT BY FACSIMILE TRANSMISSION OR ELECTRONIC MAIL ARE NOT ALLOWED AND WILL NOT BE COUNTED.**

Pursuant to Bankruptcy Rule 3017, the Bankruptcy Court has ordered that original Ballots for the acceptance or rejection of the Plan must be received by the Balloting Agent on or before _____, **2011, at _:__ p.m. (prevailing Pacific Time)**. Please refer to the Disclosure Statement Order posted on the Noticing Agent Website for further voting procedures and rules.

1.5. **Acceptance of the Plan**. As a Creditor, your acceptance of the Plan is important. In order for the Plan to be confirmed, each Impaired Class of Claims must vote to accept the Plan (by a majority in number and two-thirds in dollar amount of the Claims voting), or the Plan must qualify for cramdown of any non-accepting Class of Claims pursuant to Bankruptcy Code section 1129(b). In any case, at least one impaired Class of Claims, excluding the votes of insiders, must actually vote to accept the Plan pursuant to Bankruptcy Code section 1126(c). **YOU ARE URGED TO COMPLETE, DATE, SIGN AND PROMPTLY MAIL THE BALLOT ATTACHED TO THE NOTICE. PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE CREDITOR.**

2. **THE DEBTORS**.

2.1. **Description of Debtors and Their Business**. As of the Petition Date, the Debtors' principal business was the operation of 45 western-style full-service restaurants that provided guests with a wide array of menu selections. The Debtors operated under the trade name "Claim Jumper."

2.2. Founded in 1977, the first Claim Jumper restaurant was located in Los Alamitos, California. As of the Petition Date, the Claim Jumper restaurant chain operated in 8 states primarily in the Western United States, Wisconsin and Illinois, with 27 of their 45 restaurants located in California. As of the Petition Date, the Debtors employed approximately 4,600 employees.

2.3. **Debtors' First Day Motions, Ordinary Course Payments and DIP Loans**. On the Petition Date, the Debtors filed certain motions requesting authority to pay certain prepetition obligations, including: (i) employee obligations [Docket No. 5]; (ii) insurance obligations [Docket No. 14]; (iii) tax obligations [Docket No. 7]; (iv) customer program obligations [Docket No. 13]; (v) claims of vendors subject to Bankruptcy Code section 503(b)(9) [Docket No. 15]; and (vi) claims of vendors subject to the Perishable Agricultural Commodities Act of 1930 and similar statues [Docket No. 6] (collectively, the **"First-Day Motions"**). On September 13, 2010, the Bankruptcy Court granted the relief sought in the First-Day Motions. Additionally, on October 19, 2010, the Bankruptcy Court entered its Order [Docket No. 271] authorizing the Debtors on a final basis to (i) use cash collateral and (ii) obtain secured postpetition financing.

2.4.    **Sale of Substantially All of the Debtors' Assets**. On the Petition Date, the Debtors filed motions seeking approval of (i) certain bid procedures (the "**Bid Procedures Motion**") [Docket No. 33] and (ii) the sale of substantially all of the Assets (the "**Sale Motion**") [Docket No. 34] to the stalking horse bidder, or another Successful Bidder (as defined in the Bid Procedures Motion), following an auction.

On October 1, 2010, the Bankruptcy Court entered its Order granting the Bid Procedures Motion and setting certain bidding procedures and auction guidelines for the proposed sale of substantially all of the Debtors' Assets (the "**Bid Procedures Order**") [Docket No. 161]. On October 28, 2010, the Debtors held an auction (the "**Auction**") in accordance with the Bid Procedures Order at which four qualified bidders participated in multiple rounds of competitive bidding. At the conclusion of the Auction, the Debtors, in consultation with the Creditors' Committee and the agent for the Prepetition Secured Parties, determined that the Buyer had submitted the highest and best offer for the purchase of substantially all of the Debtors' Assets.

On November 4, 2010, the Bankruptcy Court entered the Sale Order authorizing and approving the Sale to the Buyer and the Asset Purchase Agreement. The Sale closed on the Closing Date. The Asset Purchase Agreement provided for a contract purchase price of: (i) $48.3 million in cash, (ii) the assumption of up to $23.3 million in assumed liabilities and (iii) $5 million in cash to collateralize the Debtors' existing letter-of-credit obligations, subject to working capital adjustments as of the Closing Date. A true and correct copy of the Asset Purchase Agreement may be viewed at docket entry number 399. Following the Closing Date, the Debtors ceased retail operations and commenced the wind-down of their affairs. In addition, in accordance with the DIP Order, the Debtors distributed to the Prepetition Secured Parties approximately $37.3 million of the Sale proceeds on account of the Prepetition Secured Parties' first priority lien on substantially all of the Debtors' Assets. As of the filing of this Disclosure Statement, the Debtors' Assets principally consist of the Retained Causes of Action and the remaining undistributed cash proceeds of the Sale (the "**Remaining Assets**"), including the funds allocable to the GUC Trust, and any additional amounts that may available to distribute to the Prepetition Secured Parties on account of their first priority lien.

3.    **SUMMARY OF THE PLAN.**

3.1.    **Purpose of the Plan.** The Debtors proposed the Plan, in consultation with the Creditors' Committee and the Prepetition Secured Lenders, over the alternative of converting the Debtors' chapter 11 bankruptcy cases to Chapter 7 because the Debtors believe that: (i) the Plan ensures a timely resolution of the Cases, including the distribution of the Debtors' remaining Assets, and (ii) the Plan avoids unnecessary costs to the Debtors' Estates which would accrue should the Cases be converted to Chapter 7. **For these reasons, both the Debtors and the Creditors' Committee are in favor of the Plan.**

3.2.    **Classification and Treatment of Claims and Interests under the Plan.** All Allowed Claims and Interests, except the Allowed Unclassified Claims, are placed in the Classes, and shall receive the treatment, set forth in Article I of the Plan. In accordance with Bankruptcy Code section 1123(a)(1), Administrative Expense Claims, Professional Fee Claims and Priority Tax Claims have not been classified. A Claim or Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes.

3.3.    **GUC Trust and Class IV Claims.** On September 30, 2010, the Creditors' Committee filed an objection to the DIP Motion and the proposed DIP Order. Following discussions among the Debtors, the Creditors' Committee, the DIP Agent, and the Prepetition Secured Parties immediately prior to the October 6, 2010 hearing on the DIP Motion, the Creditors' Committee agreed on the record at the

hearing to withdraw its pending objection in consideration for, among other things, the DIP Lenders' agreement that from the proceeds it may receive from the sale of the Debtors' Assets that secured the DIP Credit Agreement and the Prepetition Credit Agreement, it would turn over to the GUC Trust for the distribution to the Holders of Allowed General Unsecured Claims the sum of (i) $400,000 plus (ii) 7% of the difference between (i) the cash component of the purchase price of the Sale actually received by the Debtors, the Prepetition Agent and/or the DIP Agent (as defined in the Final DIP Order) (in the aggregate) (which amount shall not be subject to set-off or adjustment of any kind) minus (ii)(a) $27,000,000, if the stalking horse bidder prevailed at the Auction, or (b) $27,750,000 if any bidder other than the stalking horse bidder should prevail at the Auction (the difference being the expense reimbursement owing to the stalking horse bidder). This agreement was reflected in the terms of the Final DIP Order. Based on the terms of the Final DIP Order, each Holder of an Allowed General Unsecured Claim was to receive a beneficial interest in the GUC Trust that would entitled it to pro rata distributions from the GUC Trust in accordance with terms and provisions of the GUC Trust Documents and the GUC Trust Stipulation. The sale of the Debtors' Assets to the Buyer was consummated on December 6, 2010, and $1,835,070 was funded into the GUC Trust pursuant to the terms of the Final DIP Order.

Distributions from the GUC Trust will be impacted by the ultimate amount of allowed Class IV Claims following the Claims resolution process. The Debtors estimate that the aggregate amount of Allowed Class IV Claims (excluding Subordinated Note Claims, which will receive a separate distribution from the GUC Trust on account of the Subordinated Note Agreement as described in Section 3.4 below) is approximately $[_____]. Based upon these estimates, the amount funded into the GUC Trust (which may be reduced by the costs of administering the GUC Trust), and the amount payable from the GUC Trust to the Holders of the Subordinated Note Claims in connection with Subordinated Note Agreement, Holders of Allowed Class IV Claims (excluding Holders of the Subordinated Note Claims) will receive an estimated percentage recovery from the GUC Trust of approximately [   ]%.

The Debtors believe that the creation and funding of the GUC Trust greatly enhances the recoveries to Holders of General Unsecured Claims. Specifically, given the scope of the Prepetition Secured Parties and DIP Parties' liens and security interests and the severely undersecured position of the Prepetition Secured Parties, the Debtors believe that General Unsecured Creditors would have received little to none of the proceeds from the Sale absent the agreement to fund the GUC Trust reflected in the DIP Order and the GUC Trust.

3.4. **The Subordination Dispute and the Resolution Between the Committee, the GUC Trustee and the Holders of the Subordinated Notes Claims.** Following the entry of the DIP Order, a dispute arose between the Creditors' Committee and the Holders of the Subordinated Note Claims regarding whether Holders of the Subordinated Note Claims were entitled to participate in the GUC Trust (the "**Subordination Dispute**"). In connection with the Subordination Dispute, (i) the Creditors' Committee and the GUC Trustee filed a motion seeking approval of the GUC Trust Stipulation and a formal objection to Claims of the Holders of the Subordinated Note Claims (the "**Committee Claim Objection**") and (ii) Black Canyon filed responsive pleadings to both the motion to approve the GUC Trust Stipulation and the Committee Claim Objection.

On April 28, 2011, the Bankruptcy Court ordered the parties to attempt to resolve the Subordination Dispute through mediation [Docket No. 627]. On June 29, 2011, the parties participated in the Bankruptcy Court-ordered mediation and reached a resolution of the Subordination Dispute (the "**Subordinated Note Agreement**"). The Subordinated Note Agreement was reflected in a stipulation between the parties [Docket No. 693] and provides, among other things, (i) that Private Capital Partners LLC, as the record Holder of the Subordinated Note Claims, will have a single Allowed Claim as set forth in the proof of claim docketed as claim number 208 on the Debtors' claims register (the "**Allowed Subordinated Note Claim**"), (ii) that, based on such Allowed Subordinated Note Claim, Private Capital

Partners LLC will be entitled to a single distribution from the GUC Trust in the amount of $475,000, (iii) for the resolution of the Committee's motion seeking approval of the GUC Trust Stipulation and the pending Committee Claim Objection, and (iv) certain releases among the Committee, its members, the GUC Trustee, the Debtors and their Estates, and the Holders of the Subordinated Note Claims. On July 28, 2011, the Bankruptcy Court entered its order approving the Subordinated Note Agreement [Docket No. 694]. Upon approval of the Subordinated Note Agreement and payment of the Allowed Subordinated Note Claim as set forth in the Subordinated Note Agreement, all claims or causes of action of the Debtors and their Estates against the Holders of the Subordinated Note Claims will be released. Accordingly, no such claim or cause of action will be assigned under the Plan. In addition, upon approval of the Subordinated Note Agreement and payment of the Allowed Subordinated Note Claim as set forth in the Subordinated Note Agreement, all claims or causes of action of the Holders of the Subordinated Note Claims against the Debtors and their Estates will be released. Nothing within the Plan nor within this Disclosure Statement modifies the rights or benefits of parties as set forth in the Subordinated Note Agreement.

### 3.5. **Implementation and Execution of the Plan**.

3.5.1. **Effective Date**. As set forth in Article II of the Plan, the Plan shall become effective on the date which is the first Business Day on which each condition set forth in Article IV of the Plan has been satisfied or waived as set forth therein. Upon the occurrence of the Effective Date, the Debtors will File and post on the Noticing Agent Website a notice of confirmation and occurrence of the Effective Date. You will not receive further notice of the occurrence of the Effective Date and should monitor the Noticing Agent Website for such notice.

3.5.2. **Summary of Means of Implementation and Execution of the Plan**. Article II of the Plan sets forth the means by which the Plan shall be implemented and executed, the dissolution of the Debtors, the resignation of the Debtors' directors and officers, and objections to and allowance of Claims for purposes of the distribution from the GUC Trust.

3.5.3. **Substantive Consolidation**. As set forth in Section 2.6 of the Plan, for the sole purpose of implementing and executing the Plan only, all Assets of and Claims against the Debtors will be deemed to be substantively consolidated. As a result, Claims filed against multiple Debtors seeking recovery of the same debt shall only receive a single distribution from the consolidated Debtors' estates or the GUC Trust, as applicable, to the extent such Claim is an Allowed Claim. Intercompany Claims will be disregarded for both voting and distribution purposes. No Creditors are adversely affected by such consolidation.

3.5.4. **The Debtors' Abandonment, Disposal and/or Destruction of the Records**. As set forth in Section 2.7 of the Plan, the Debtors shall be authorized to abandon all originals and/or copies of documents and business records pursuant to Bankruptcy Code section 554. With the closing of the Sale and the full wind-down of the Debtors' operations, the Debtors have identified certain documents, books and records (the "**Records**") that are outdated, burdensome, and/or of inconsequential value to the Debtors' estates and are not necessary or relevant to: (i) the Debtors' performance of their duties and obligations; (ii) any pending litigation; (iii) the filing of any tax returns; (iv) the resolution of Claims against the Debtors; or (v) any potential Causes of Action that the Debtors may have. To complete the Debtors' wind-down, avoid the incurrence of unnecessary storage costs and facilitate the consolidation and preservation of any pertinent documents, books and records, the Debtors will abandon, dispose of, and/or destroy the Records no earlier than thirty (30) days after entry of final decree closing the Cases.

Bankruptcy Code section 554 provides that, *inter alia*, "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value

and benefit to the estate." 11 U.S.C. § 554(a). Courts have held that a debtor-in-possession's decision to abandon property of the estate rests on the debtor's business judgment. *See, e.g., In re Cult Awareness Network, Inc.*, 205 B.R. 575, 579 (Bankr. N.D. Ill. 1997). The Debtors have concluded in their business judgment that they will no longer need to retain the Records following the closing of the Cases and the Plan should therefore authorize, but not direct, the Debtors to abandon, dispose of, or destroy the Records.[2]

      3.6.   **Executory Contracts and Unexpired Leases**. As stated in Article III of the Plan, the Debtors believe that all executory contracts and unexpired leases of the Debtors were assumed and assigned, or rejected, during the Cases. Accordingly, Article III of the Plan, which is included out of an abundance of caution, (i) provides that all executory contracts and unexpired leases of the Debtors which are not assumed and assigned, or rejected, prior to the Confirmation Date, if any, shall be deemed rejected, and (ii) sets forth procedures for asserting and resolving Rejection Claims, if any.

      3.7.   **Retained Causes of Action**. The Retained Causes of Action shall be assigned as set forth in Section 5.2 of the Plan.

      3.8.   **Conditions Precedent to Confirmation and Consummation of the Plan**. Article IV of the Plan sets forth the conditions that must occur prior to both Confirmation of the Plan and the occurrence of the Effective Date. Article IV also describes the Debtors' ability to waive such conditions, as well as the effect of non-occurrence of the conditions to the Effective Date, including the vacatur of the Confirmation Order. If the Confirmation Order is vacated pursuant to Section 4.4 of the Plan, (i) the Plan shall be null and void in all respects, and (ii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors or (b) prejudice in any manner the rights of the Debtors or any other party in interest.

      3.9.   **Miscellaneous Provisions**. Article V of the Plan contains several miscellaneous provisions, including: (i) the right to pursue Avoidance Actions, if any; (ii) the retention of jurisdiction by the Bankruptcy Court over certain matters following the Confirmation Date; (iii) the Debtors' payment of statutory fees pursuant to 28 U.S.C. § 1930; (iv) the dissolution of the Creditors' Committee; and (v) the termination of Kurtzman Carson Consultants LLC in its capacity as claims, noticing and balloting agent.

      **ADDITIONALLY, PLEASE NOTE THAT SECTIONS 5.14 THROUGH 5.17 OF THE PLAN GOVERN THE EXCULPATION, LIMITATION OF LIABILITY AND RELEASE OF CERTAIN PARTIES. PLEASE REVIEW THESE PROVISIONS CAREFULLY.**

      3.10.   **Final Fee Hearing and Final Decree**.

      3.10.1.   **The Professional Fee Claim Bar Date and the Final Fee Hearing**. Article VI of the Plan describes the Professional Fee Claim Bar Date and the Final Fee Hearing. The Debtors will File and post on the Noticing Agent Website a notice of the Professional Fee Claim Bar Date and the

---

[2]    The Debtors shall not be required to comply with applicable local, state and federal statutes, rules and ordinances except to the extent that compliance is necessary to ensure the government's interest in public health and safety. *See generally Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protection*, 474 U.S. 494 (1986). Additionally, any action by any local, state or federal agency, department or governmental authority or any other entity to prevent, interfere with, or otherwise hinder the Debtors' abandonment, disposal and/or destruction of the Records shall be enjoined.

Final Fee Hearing. You will not receive further notice of the Professional Fee Claim Bar Date, the Professional Fee Claims or the Final Fee Hearing and should monitor the Noticing Agent Website for such notice. The Professional Fee Claim Bar Date and the Final Fee Hearing Time can also be obtained by contacting counsel for the Debtors.

3.10.2. **Entry of the Final Decree and Closing of the Cases.** As set forth in Article VI of the Plan, subsequent to the Effective Date, the Final Fee Hearing and the Debtors' fulfillment of the standards for the closing of the Cases, the Debtors' counsel shall File a proposed form of order under certification of counsel (the **"Final Decree Certification"**) requesting the entry of a Final Decree pursuant to Bankruptcy Code section 350(a). Such Final Decree shall close the Cases, which include: *In re Goldcoast Liquidating, LLC* (10-12819) (KG) and *In re Goldcoast Management Liquidating, LLC* (10-12820) (KG). At that time, the Debtors believe that their estates will be fully administered as (i) the Confirmation Order will be a Final Order, (ii) the distribution by the Estates will be completed, (iii) all motions, contested matters and adversary proceedings will be resolved, and (iv) all U.S. Trustee fees will have been paid.

Bankruptcy Code section 350(a) provides that a case shall be closed "[a]fter an estate is fully administered and the court has discharged the trustee." 11 U.S.C. § 350(a). Likewise, Bankruptcy Rule 3022 provides that, "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court … shall enter a final decree closing the case." Fed. R. Bankr. P. 3022. Further, Local Rule 5009-1 provides that, "[u]pon written motion, a party in interest may seek the entry of a final decree at any time after the confirmed plan has been substantially consummated provided that all required fees due under 28 U.S.C. § 1930 have been paid." Del. Bankr. L.R. 5009-1(a). Based upon the foregoing, the Bankruptcy Court's entry of the Final Decree is appropriate and necessary subsequent to the Effective Date upon submission of the Final Decree Certification.

4. **FEASIBILITY.**

4.1. **Financial Feasibility Analysis.**

4.1.1. **Bankruptcy Code Standard.** The Bankruptcy Code requires that, in order to confirm a plan, the Bankruptcy Court must find that confirmation of such plan is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor(s) unless contemplated by the plan. 11 U.S.C. § 1129(a)(11).

4.1.2. **No Need for Further Reorganization of Debtors.** Because the Debtors have ceased business operations, and because the Plan provides for the liquidation and distribution of all of the Debtors' Assets and the dissolution of the Debtors, confirmation of the Plan will not be followed by further reorganization of the Debtors.

5. **BEST INTERESTS OF CREDITORS AND ALTERNATIVES TO PLAN.**

5.1. **Chapter 7 Liquidation.**

5.1.1. **Bankruptcy Code Standard.** Notwithstanding acceptance of a plan by a voting impaired class, if an impaired class does not vote unanimously to accept the plan, the bankruptcy court must determine that the plan provides to each member of such impaired class a recovery, on account of each member's claim or interest, that has a value, as of the effective date, at least equal to the recovery that such class member would receive if the debtor was liquidated under Chapter 7. 11 U.S.C. § 1129(a)(7). This inquiry is often referred to as the "best interests of creditors test."

In a typical Chapter 7 case, a trustee is elected or appointed to liquidate a debtor's assets for distribution to creditors in accordance with the priorities set forth in the Bankruptcy Code. Generally, secured creditors are paid first from the proceeds of sales of the properties securing their liens. If any assets are remaining in the bankruptcy estate after satisfaction of the secured creditors' claims, administrative expenses are next to receive payment. Unsecured creditors are paid from any remaining sales proceeds, according to their respective priorities. Unsecured creditors with the same priority share Pro Rata. Finally, equity interest holders receive the balance that remains, if any, after all creditors are paid.

### 5.1.2. **Plan is in the Best Interests of Creditors**.

The Plan satisfies the best interests test because the recoveries expected to be available to Holders of Allowed Claims under the Plan will be greater than the recoveries expected to be available in a Chapter 7 liquidation. For example, if a Chapter 7 trustee were to be appointed in these Cases, he or she likely would require considerable time and incur substantial fees and expenses, including a fee for the Trustee in an amount of up to 3% of the value of all property distributed in the Chapter 7 case and the fees of the Trustee's professionals in analyzing the Debtors' Cases and Assets. However, in this Case, because substantially all of the Debtors' Assets already have been liquidated through the Sale and pursuant to the Sale Order, the conversion of these Cases to Chapter 7 would bring no material benefit to the Creditors, while imposing additional and unnecessary expenses and delays on the Debtors' estates—thereby negatively affecting the Creditors' recoveries. Liquidation of the Debtors' Assets pursuant to this Plan thus will provide for a greater (and more rapid) recovery by the Debtors' Creditors and is therefore in their best interests.

### 5.2. **Continuation of the Bankruptcy Case**. The Debtors are not a going concern and thus there is no benefit to remaining in Chapter 11.

### 5.3. **Alternative Plan(s)**. The Debtors do not believe that there are any alternative plans. The Debtors believe that the Plan, as described herein, enables Holders of Claims to realize the greatest possible value under the circumstances, and that, compared to any alternative plan, the Plan has the greatest chance to be confirmed and consummated.

## 6. **RISK FACTORS**.

Holders of Claims who are entitled to vote on the Plan should read and carefully consider the following factors, as well as the other information set forth in this Disclosure Statement and the Plan, before deciding whether to vote to accept or reject the Plan.

### 6.1. **Certain Bankruptcy Considerations**.

Even if an Impaired Class entitled to vote votes to accept the Plan, and the requirements for "cramdown" are met for any Impaired Class that fails to vote to accept or is deemed to reject the Plan, the Bankruptcy Court may exercise substantial discretion and may choose not to confirm the Plan. Bankruptcy Code section 1129 requires, among other things, that the value of distributions to dissenting holders of Claims or Interests may not be less than the value such Holders would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code. Although the Debtors believe that the Plan will meet such requirement, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### 6.2. **Claims Estimation**.

There can be no assurance that the estimated amount of Claims set forth in the Plan is correct, and the actual Allowed amounts of Claims may differ from the estimates. Any value given as to the Claims against and the Assets of the Debtors reflects an estimation of such value.

7.    **TAX CONSEQUENCES OF THE PLAN**.

THE DEBTORS HAVE NOT REQUESTED A RULING FROM THE IRS OR AN OPINION OF COUNSEL WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN. THUS, NO ASSURANCE CAN BE GIVEN AS TO THE TAX CONSEQUENCES OF THE PLAN. EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS URGED TO CONSULT ITS OWN TAX ADVISOR FOR THE FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

8.    **CREDITORS' COMMITTEE SUPPORT**.

As set forth more fully in the letter accompanying this Disclosure Statement, the Creditors' Committee believes that acceptance of the Plan is in the best interests of the Debtors and their creditors, including the Holders of Class IV Claims.

9.    **CONCLUSION**.

It is important that you exercise your right to vote on the Plan. It is the Debtors' belief and recommendation that the Plan fairly and equitably provides for the treatment of all Claims against and Interests in the Debtors.


IN WITNESS WHEREOF, the Debtors have executed this Disclosure Statement this [____]th day of [August] 2011.

Goldcoast Liquidating, LLC
Goldcoast Management Liquidating, LLC

By:          /s/ William G. Taves
Name:        William G. Taves
Title:       Chief Financial Officer

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Goldcoast Liquidating, LLC, *et al.*,[1] | ) | Case No. 10–12819 (KG) |
| | ) | Jointly Administered |
| Debtors. | ) | |

---

## DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION

---

### Article I
### TREATMENT AND CLASSIFICATION OF CLAIMS AND INTERESTS; IMPAIRMENT

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation and Distribution, pursuant hereto and pursuant to Bankruptcy Code sections 1122 and 1123(a)(1). Capitalized terms used, but not otherwise defined, herein shall have the meanings set forth in section 1.2 of the *Disclosure Statement for Debtors' First Amended Joint Plan of Liquidation*, dated March 8, 2011 (as amended, modified or supplanted, the "**Disclosure Statement**").

| Class | Type | Status Under Plan | Treatment | Estimated Aggregate Amount in Class ($) | Estimated Recovery of Class (%) |
|---|---|---|---|---|---|
| I | Allowed Other Secured Claims | Unimpaired, Deemed to Accept | The Debtors assert that no amount is due on such Claims because such Claims have been previously satisfied, are Assumed Liabilities or shall be satisfied by the Debtors prior to the Effective Date. Each Holder of an Allowed Other Secured Claim that has not been satisfied or is not an Assumed Liability shall, to the extent that such Allowed Other Secured Claim represents a secured claim senior in priority to the Secured Lender Claim, either (i) be paid by the Debtor the full amount of such Allowed Other Secured Claim in Cash on the Effective Date or on the date on which | n/a | 100% |

---

[1] The Debtors in these cases, together with the last four digits of each of the Debtors' federal tax identification numbers, are: Goldcoast Liquidating, LLC (f/k/a Claim Jumper Restaurants, LLC) (1053) and Goldcoast Management Liquidating, LLC (f/k/a Claim Jumper Management, LLC) (6481). The Debtors' headquarters and mailing address is: 19200 Von Karman Avenue, Suite 400, Irvine, CA 92612.

| | | | such Allowed Other Secured Claim becomes due and payable pursuant to the terms thereof, the agreement upon which such Allowed Other Secured Claim is based, or any applicable Order of the Bankruptcy Court or (ii) have its collateral returned to it by the Debtors as soon as practicable after the Effective Date. | | |
|---|---|---|---|---|---|
| II | Secured Lender Claims | Impaired, Entitled to Vote | The Holder of each Secured Lender Claim shall receive its *Pro Rata* share of (i) the Cash held by the Debtors after the funding of the GUC Trust and the payment of all Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Pre-Sale Closing Administrative Expense Claims and Allowed Administrative Expense Claims, (ii) any remaining assets of the Debtors' or their Estates, including, without limitation, (A) the Retained Causes of Action, (B) any recovery from GUC Avoidance Actions net of reasonable legal fees, costs and expenses and (C) reimbursement for any amount of the Carve-Out (as defined in the DIP Order) used in connection with the investigations, prosecution, or settlement of the GUC Avoidance Actions. Distribution of the assets described in (i) and (ii)(A) shall be made by the Debtors to the Prepetition Agent for distribution to the Prepetition Secured Parties on or as soon as reasonably practicable after the Effective Date. Distribution of the assets described in (ii)(B) and (C), and any assets that come into the Debtors possession after the Effective Date, shall be made by the Debtors or the GUC Trustee, as applicable, by no later than five business days following receipt by the Debtors or the GUC Trust or any of their representatives. | Not less than $69,238,847.73 million, which consists of (i) principal in the amount of $62,101,000 and (ii) interest in the amount of $7,137,847.73, plus fees and expenses, including without limitation, attorneys' fees and expenses | 54% |
| III | Allowed Priority Claims | Unimpaired, Deemed to Accept | The Debtors assert that no amount is due on such Claims because such Claims have been previously satisfied, are Assumed Liabilities, or shall be satisfied by the Debtors prior to the Effective Date. Each Holder of an Allowed Priority Claim that has not been satisfied or is not an Assumed Liability shall be paid by the Debtor the full amount of such Allowed Priority Claim, in Cash on the Effective Date or on the date on which such Allowed Priority Claim | n/a | 100% |

| | | | | | |
|---|---|---|---|---|---|
| | | | becomes due and payable pursuant to the terms thereof, the agreement upon which such Allowed Priority Claim is based, or any applicable Order of the Bankruptcy Court. | | |
| IV | General Unsecured Claims | Impaired, Entitled to Vote | Each Holder of an Allowed General Unsecured Claim (excluding the Holder of the Subordinated Note Claims, who shall receive a separate payment from the GUC Trust pursuant to the Subordinated Note Agreement) shall receive (i) a *Pro Rata* beneficial interest in the GUC Trust and (ii) *Pro Rata* distributions from the GUC Trust in accordance with the terms and provisions of the GUC Trust Documents. | [    ] | [    ]% |
| V | Intercompany Claims | Impaired, Deemed to Reject | Holders of Claims in this Class will not receive any recovery on account of their Claims. | n/a | 0.00% |
| VI | Interests | Impaired, Deemed to Reject | Holders of equity Interests in the Debtors will retain no ownership interests in the Debtors under the Plan and such Interests shall be cancelled effective as of the Effective Date. | n/a | 0.00% |

**1.1.    Allowed Unclassified Claims**.  The Debtors assert that no amount is due on account of the Unclassified Claims (except for Professional Fee Claims and approximately $150,000 in unpaid Pre-Sale Closing Administrative Expenses) because the Unclassified Claims have been previously satisfied or are Assumed Liabilities.  Each Holder of an Allowed Unclassified Claim (except for Professional Fee Claims[2]) that has not been satisfied or is not an Assumed Liability shall be paid by the Debtor the full amount of such Allowed Unclassified Claim, in Cash, (i) on or before the Effective Date or (ii) on the date on which such Allowed Unclassified Claim becomes due and payable pursuant to (a) its terms, (b) the agreement upon which such Allowed Unclassified Claim is based, or (c) any applicable Order of the Bankruptcy Court.

**1.2.    Special Provision Governing Claims**.  Nothing under this Plan shall affect the Debtors' rights and defenses in respect of any Claim, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against such Claims.

**1.3.    Confirmation Pursuant to Bankruptcy Code Section 1129(b)**.  In the event that one of the Classes that is entitled to vote on the Plan votes to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm the Plan under Bankruptcy Code section 1129(b).

**1.4.    Cancellation of Claims and Interests**.  Except as otherwise set forth in this Plan, and except for purposes of evidencing a right to the Distribution, on the Effective Date, all agreements and other

---

[2] Payment of Professional Fee Claims shall be governed by Article VI of this Plan.

documents evidencing the Claims or rights of any Creditor against the Debtors, including all notes, guarantees, mortgages, and all Interests shall be cancelled.

## Article II
## IMPLEMENTATION AND EXECUTION OF THE PLAN

**2.1.**     **Effective Date**.  The Plan shall become effective on the date that is the first Business Day on which each condition set forth in Article IV of the Plan has been satisfied or waived as set forth therein (the "**Effective Date**").

**2.2.**     **Implementation of the Plan**.  The Plan will be implemented through the Debtors' distribution of (i) the GUC Trust Funds to the GUC Trust, to the extent such distribution has not already occurred, and (ii) the Debtors' distribution to Holders of Allowed Claims in Classes I, II, and III.  Disallowed Claims will not receive any distribution.

**2.3.**     **Distribution to Holders of Allowed Class IV Claims**.  Each Record Holder of an Allowed Class IV Claim shall receive a beneficial interest in the GUC Trust in accordance with the terms and provisions of the GUC Trust Documents.  Distributions to the Record Holders of Allowed Class IV Claims shall be (a) made in accordance with the terms and provisions of the GUC Trust Documents, and (b) delivered (i) at the address set forth on the proof of claim Filed by such Holder, (ii) at the address set forth in any written notices of address change Filed by such Holder, (iii) at the addresses reflected in the Schedules if neither a proof of claim nor a written notice of address change has been Filed, or (iv) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtors' books and records; *provided, however*, that no distributions shall be made to the Record Holders of Allowed Class IV Claims until the earlier to occur of the Effective Date or a Final Order authorizing such distributions.

**2.4.**     **Dissolution of the Debtors**.  On the Effective Date or as soon thereafter as is reasonably practicable,  the affairs of the Debtors may be wound up and the Debtors may be dissolved at any time without the need for any further action or approval; *provided, however*, that the entry of the Final Decree in these Cases shall effect such dissolution of all remaining Debtors to the extent permissible under applicable law.

**2.5.**     **Officers and Directors**.  William G. Taves is currently is the Chief Financial Officer of each of the Debtors.  Mr. Taves is an insider, as defined in the Bankruptcy Code.  Todd Williams and Liza Anderson currently serve as the Vice President, Finance and Controller, respectively, for the Debtors.  In connection with the wind-down of the Debtors' affairs, Messrs. Taves and Williams and Ms. Anderson shall continue their employment with the Debtors in their current roles and receive compensation on employment terms that are mutually acceptable to such individuals and the Debtors.  Mr. Taves, Timothy Flynn, and Kris Galashan are members of the Board of Managers of Goldcoast Liquidating, LLC and will continue to serve in such capacity during the wind-down of the Debtors' affairs without any compensation from the Debtors or the Estates.  In addition, Mr. Taves will serve as the responsible officer of the Debtors and for the Estates until his successor is duly elected or appointed and qualified or until the earlier of (i) his death, resignation or removal in accordance with the terms of the articles of organization and by-laws of the respective Debtor and state law or (ii) the date of the entry of the Final Decree.  On the date of the entry of the Final Decree, the member(s) of the board of managers and executive officer(s) of the Debtors shall be deemed to have resigned to the extent permissible under applicable law.

**2.6.** **Substantive Consolidation.** For the purposes of the Cases and the Plan only, all Assets of and Claims against the Debtors will be deemed to be substantively consolidated. As a result, Claims filed against multiple Debtors seeking recovery of the same debt shall only receive a single Distribution from the consolidated Debtors' estates to the extent such Claim is an Allowed Claim. Claims of Debtors against other Debtors will be disregarded for both voting and distribution purposes.

**2.7.** **Records.** Pursuant to Bankruptcy Code section 554, the Debtors shall be authorized, but not directed, to abandon all originals and/or copies of documents and business records no earlier than thirty (30) days after entry of the Final Decree closing the Cases.

**2.8.** **Effectuating Documents.** The officer(s) and director(s) of each Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such other actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

**2.9.** **Objections to Claims.** Except as provided herein and in section 3.2 of the Plan, the deadline to File objections to Claims shall be 120 days after the Effective Date or such later date that may be set by the Bankruptcy Court upon a motion of the Debtors, the Creditors' Committee or the GUC Trustee (which motion may be approved without a hearing and without notice to any party) (the "**Claims Objection Deadline**"), and any Claim that is not the subject of a timely Filed objection as of the Claims Objection Deadline shall be an Allowed Claim in the amount set forth on the proof of claim Filed by the Holder of such Claim. If a Disputed Claim becomes Allowed, in full or in part, such Claim shall be treated, to the extent Allowed, in accordance with the treatment of its Class.

## Article III
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**3.1.** **Background.** The Debtors believe that all executory contracts and unexpired leases of the Debtors were assumed and assigned, or rejected, during the pendency of the Cases. Article III of the Plan is included out of an abundance of caution.

**3.2.** **Executory Contracts and Unexpired Leases.** All executory contracts and unexpired leases of the Debtors which have not been assumed and assigned, or rejected, prior to the Confirmation Date shall be deemed rejected as of the Confirmation Date. Any Creditor asserting a Claim for monetary damages as a result of the rejection of an executory contract or unexpired lease deemed rejected pursuant to this Plan shall file a proof of claim substantially in the form of Official Form 10 with the Clerk of the Bankruptcy Court ("**Rejection Claim**"), and serve it upon Debtors' counsel and the GUC Trustee by overnight mail by no later than twenty (20) days after the Confirmation Date.

**3.3.** **Rejection Claims.** Any Rejection Claim not filed pursuant to section 3.2 of the Plan shall be forever disallowed and barred. If one or more Rejection Claims are filed pursuant to section 3.2 of the Plan, notwithstanding section 2.9 of the Plan, the Debtors or the GUC Trustee may File one or more objections to any such Rejection Claims, and shall serve any objection upon the claimant, the claimant's counsel, if any, and Debtors' counsel or the GUC Trustee, as applicable, by overnight mail no later than forty-five (45) days after the Confirmation Date. Any response by the claimant to such objection(s) shall be Filed and served by overnight mail upon Debtors' counsel and the GUC Trustee no later than fifty-five (55) days after the Confirmation Date. If any such objection(s) is timely Filed and cannot be resolved consensually by the parties, a hearing shall be held by the Bankruptcy Court as soon as is reasonably practicable on or after seventy-five (75) days following the Confirmation Date, and in any event no later than ninety (90) days following the Confirmation Date, to determine whether such Rejection Claim(s) is Allowed or Disallowed, in full or in part. If a Rejection Claim is determined to be Allowed, the date of such determination shall be deemed to be the Record Date and the Holder of the Claim on the date of such determination shall be deemed to be the Record Holder of such Claim. If a Rejection Claim becomes

Allowed, in full or in part, such Claim shall be an Allowed Class IV Claim to the extent that such Claim becomes Allowed and the Record Holder of such Claim shall receive the treatment set forth in sections 2.2 and 2.3 of the Plan.

## Article IV
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

**4.1.** **Condition to Confirmation**. Unless duly waived pursuant to section 4.3 of the Plan, the Bankruptcy Court's entry of the Confirmation Order, in form and substance reasonably satisfactory to the Debtors and the Creditors' Committee, shall be the condition precedent to the Confirmation of the Plan.

**4.2.** **Conditions to the Effective Date**. The Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived pursuant to section 4.3 of the Plan: (i) the Confirmation Order, in form and substance reasonably satisfactory to the Debtors and the Creditors' Committee, shall have been entered by the Bankruptcy Court, (ii) the Confirmation Order shall have become a Final Order, and (iii) the GUC Trust shall have been created.

**4.3.** **Waiver of Conditions to Confirmation or the Effective Date**. The conditions set forth in sections 4.1 and 4.2 of the Plan may be waived in whole or part in writing by the Debtors, in consultation with the Creditors' Committee, at any time without further Order.

## Article V
## MISCELLANEOUS PROVISIONS

**5.1.** **Binding Effect of the Plan**. The provisions of the Plan shall be binding upon all parties to the Plan and inure to the benefit of the Debtors, the Debtors' Estates, and the respective predecessors, successors, assigns, advisors, attorneys, agents, officers and directors of either. The terms the Plan shall be enforceable against the Debtors, their Creditors and all parties-in-interest.

**5.2.** **Retained Causes of Action**. The Retained Causes of Action shall be assigned to the Prepetition Agent, for the benefit of the Prepetition Secured Parties, on the Effective Date and such assignment shall occur and be consummated without any further documentation or Order of the Bankruptcy Court. For the avoidance of doubt, upon the Bankruptcy Court's approval of the Subordinated Note Agreement and payment of the Allowed Subordinated Note Claim as set forth in the Subordinated Note Agreement, all claims or causes of action by the Debtors and their Estates against the Holders of the Subordinated Note Claims will be released. Accordingly, no such claim or cause of action will be assigned to the Prepetition Agent under this Plan.

**5.3.** **Avoidance Actions**. Prior to the Effective Date, in accordance with the terms of the DIP Order, the Creditors' Committee shall have the sole and exclusive right, standing and authority to prosecute, compromise, settle and/or otherwise deal with the GUC Avoidance Actions, in its sole discretion, with any such compromise or settlement subject to Bankruptcy Court approval (collectively, the "**GUC Avoidance Actions Litigation Rights**"). The GUC Avoidance Actions Litigation Rights shall be assigned from the Creditors' Committee to the GUC Trustee on the Effective Date and such assignment shall occur and be consummated without any further documentation or Order of the Bankruptcy Court. In the event that the Creditors' Committee or the GUC Trustee elects to prosecute any GUC Avoidance Actions, any recovery, net of reasonable legal fees costs and expenses (including reimbursement of the DIP Lenders or the Prepetition Secured Lenders for any amount of the Carve-Out (as defined in the DIP Order) used in connection with the investigation, prosecution, or settlement of the GUC Avoidance Actions), from litigation, compromise or settlement shall constitute part of the Collateral (as defined in the DIP Order), shall be subject to the DIP Liens (as defined in the DIP Order) and the Additional Liens (as defined in the DIP Order), shall be available to satisfy the DIP Superpriority Claim (as defined in the

DIP Order) and the Adequate Protection Superpriority Claim (as defined in the DIP Order) and shall be distributed to the Debtors for application in accordance with the terms of the DIP Order, the DIP Credit Agreement and the Plan. The Debtors shall have the sole and exclusive right, standing and authority to prosecute, compromise, settle and/or otherwise deal with all other Avoidance Actions other than the GUC Avoidance Actions and the Retained Causes of Action transferred to the Prepetition Secured Parties.

**5.4.** **Retention of Jurisdiction**. Following the Effective Date, the Bankruptcy Court shall retain jurisdiction over the provisions of this Plan, including Disputed Claims, Rejection Claims, and Professional Fee Claims, over all disputes and litigation which may be pending on the Confirmation Date, and over any controversies that may arise hereafter which would affect the Debtors' ability to carry out the Plan, until all such disputes and litigation shall be concluded and the Plan shall be fully consummated.

**5.5.** **Governing Law**. Except as mandated by the Bankruptcy Code or Bankruptcy Rules, as applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Delaware.

**5.6.** **Headings**. The headings of articles, paragraphs, and subparagraphs of the Plan are inserted for convenience only and shall not affect the interpretation of any provision of the Plan.

**5.7.** **Time**. Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day that is not a Business Day, then the time for the next occurrence or happening of said event shall be extended to the next day which is a Business Day.

**5.8.** **Severability**. Should any provision of the Plan be determined to be unenforceable after the Effective Date such determination shall in no way limit or affect the enforceability and operative effect of any and all of the other provisions of the Plan provided that the intent of the Plan can still be effectuated.

**5.9.** **Revocation**. The Debtors reserve the right to revoke and withdraw the Plan prior to the entry of a Confirmation Order. If the Debtors revoke or withdraw the Plan, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors, any other Person, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtors.

**5.10.** **Precedence**. In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, or any other agreement to be executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence. In the event of any inconsistency between any provision of the GUC Trust Documents and any provision of the Plan or Disclosure Statement, the GUC Trust Documents shall control and take precedence, provided that, with respect to the distribution and treatment provisions applicable to Class II as set forth in Article I of this Plan, in the event of any inconsistency between any of the provisions of the GUC Trust Documents and any provision of the Plan or Disclosure Statement, the Plan shall control. In the event of any inconsistency between any provision of any of the foregoing documents, and any provision of the Confirmation Order, the Confirmation Order shall control and take precedence. Nothing in the Confirmation Order, this Plan, the Disclosure Statement or the GUC Trust Documents relating to the GUC Avoidance Actions or the GUC Trust shall modify or be deemed to modify in any regard any term or provision of the DIP Order. Nothing in the Confirmation Order, this Plan, or the Disclosure Statement shall modify or be deemed to modify the rights or benefits of parties as set forth in the Subordinated Note Agreement.

**5.11.** **Statutory Fees**. The Debtors shall pay all fees payable pursuant to 28 U.S.C. § 1930.

**5.12.** **Dissolution of the Creditors' Committee**. On the Effective Date, the Creditors' Committee shall be dissolved and its members shall be deemed released of any continuing duties, responsibilities and obligations in connection with the Cases or the Plan and its implementation, except with respect to (i) any

matters concerning the GUC Trust Funds and/or the GUC Trust, or (ii) any appeals of the Confirmation Order through the date such appeals are finally decided, settled, withdrawn or otherwise resolved. On the Effective Date, the retention and employment of the Creditors' Committee's attorneys, accountants and other agents shall terminate, except with respect to: (i) any matters concerning the GUC Trust Funds and/or the GUC Trust, (ii) the Final Fee Hearing, or (iii) any appeals of the Confirmation Order through the date such appeals are finally decided, settled, withdrawn or otherwise resolved.

**5.13.** **Claims Agent.** Kurtzman Carson Consultants LLC ("KCC"), in its capacity as claims, noticing and balloting agent, shall be relieved of such duties on the date of the entry of the Final Decree or upon written notice by the Debtors.

**5.14.** **Exculpation and Limitation of Liability.** The Debtors, the Creditors' Committee, the members of the Creditors' Committee (in such capacity), the GUC Trustee (in such capacity), the Prepetition Secured Parties (in such capacity) (including, without limitation, the Prepetition Agent (in such capacity)), the DIP Parties (in such capacity), the Holder of the Subordinated Note Claim (in such capacity), KCC and any of such parties' Related Persons, shall not have or incur, and are hereby released from, any claim, obligation, Cause of Action, or liability against or to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective Related Persons for any act or omission in connection with, relating to, or arising out of the Cases, the negotiation and Filing of this Plan, the Filing of the Cases, the Auction, the Sale, the settlement of Claims, the renegotiation of executory contracts and leases, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for such parties' willful misconduct or gross negligence or any obligations that they have under or in connection with this Plan or the transactions contemplated in this Plan, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

**5.15.** **MUTUAL RELEASES.** EFFECTIVE AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, EACH OF THE RELEASING PARTIES AND THEIR RESPECTIVE RELATED PERSONS SHALL, AND SHALL BE DEEMED TO, COMPLETELY, CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASE, WAIVE, VOID, EXTINGUISH AND DISCHARGE EACH AND ALL OF THE RELEASED PARTIES (AND EACH SUCH RELEASED PARTY SO RELEASED SHALL BE DEEMED FOREVER RELEASED, WAIVED AND DISCHARGED BY THE RELEASING PARTIES) AND THEIR RESPECTIVE PROPERTIES AND RELATED PERSONS OF AND FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, LITIGATION CLAIMS, AVOIDANCE ACTIONS AND ANY OTHER DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, REMEDIES, JUDGMENTS AND LIABILITIES WHATSOEVER (INCLUDING, WITHOUT LIMITATION, THE SPECIAL CAUSES OF ACTION), WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, EXISTING AS OF THE EFFECTIVE DATE OR THEREAFTER ARISING, IN LAW, AT EQUITY, WHETHER FOR TORT, CONTRACT, OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE OR CIRCUMSTANCES EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING FROM OR RELATED IN ANY WAY IN WHOLE OR IN PART TO THE DEBTORS, THE DEBTORS' ASSETS, BUSINESSES, PROPERTY AND ESTATES, THE CASES, THE DISCLOSURE STATEMENT, THIS PLAN OR THE SOLICITATION OF VOTES ON THIS PLAN THAT SUCH RELEASING PARTY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR EQUITY INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT FOR OR ON BEHALF OF THE DEBTORS OR THEIR ESTATES (WHETHER DIRECTLY OR

DERIVATIVELY) AGAINST ANY OF THE RELEASED PARTIES OR THEIR RESPECTIVE RELATED PERSONS; PROVIDED, HOWEVER, THAT THE FOREGOING PROVISIONS OF THIS RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE (I) ANY CAUSES OF ACTION EXPRESSLY SET FORTH IN AND PRESERVED BY THIS PLAN OR ANY PLAN SUPPLEMENT; (II) WITH THE EXCEPTION OF THE SPECIAL CAUSES OF ACTION, ANY CAUSES OF ACTION ARISING FROM ACTUAL OR INTENTIONAL FRAUD OR WILLFUL MISCONDUCT AS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION; (III) THE RIGHTS OF THE RELEASING PARTY TO ENFORCE THIS PLAN, THE CONTRACTS, INSTRUMENTS, RELEASES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THIS PLAN OR ASSUMED PURSUANT TO THIS PLAN OR ASSUMED PURSUANT TO FINAL ORDER OF THE BANKRUPTCY COURT, OR THE RIGHTS TO ENFORCE THE SUBORDINATED NOTE AGREEMENT BY A RELEASING PARTY WHICH IS A PARTY THERETO; AND/OR (IV) ANY DEFENSES, RIGHTS OF SETOFF, OR COUNTERCLAIMS OF THE DEBTORS OR THE ESTATES THAT HAVE NOT BEEN WAIVED PREVIOUSLY. THE FOREGOING RELEASE SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON.

**5.16.** **Third Party Releases**. Effective as of the date that a Holder of an Allowed General Unsecured Claim that has indicated on its Ballot its agreement to grant the release contained in this Section 5.16 receives and accepts a distribution from the GUC Trust, for good and valuable consideration, including, without limitation, the allocation of the GUC Trust Funds to the GUC Trust and the distributions from the GUC Trust, and to the fullest extent permissible under applicable law, such Holder shall, and shall be deemed to, completely, conclusively, absolutely, unconditionally, irrevocably, and forever release, waive, void, extinguish and discharge the Released Parties, the GUC Trust and the GUC Trustee from any and all Claims, Causes of Action, Litigation Claims, Avoidance Actions and any other obligations, rights, suits, damages, judgments, debts, remedies and liabilities whatsoever (including, without limitation, the Special Causes of Action), including any Claims or Causes of Action that could be asserted on behalf of or against the Debtors, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereafter arising, in law, equity or otherwise, that such Holder of a Claim would have been legally entitled to assert in its own right (whether individually, derivatively or collectively), based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, in any way relating or pertaining to (w) the Debtors, or their respective Assets, businesses, property and Estates, (x) the Cases, (y) the negotiation, formulation and preparation of the Plan, the Disclosure Statement, or any related agreements, instruments or other document including, without limitation, all of the documents included in the Plan Supplement; and (z) the Special Causes of Action; *provided, however*, that with the exception of the Special Causes of Action, these releases will have no effect on the liability of any Released Party arising from any act, omission, transaction, agreement, event or other occurrence, constituting actual or intentional fraud or willful misconduct as determined by a Final Order of the Bankruptcy Court; *provided further, however*, the foregoing shall not constitute a waiver or release of any right of the Holder of an Allowed Claim to payment under this Plan or otherwise on account of such Allowed Claim or any of the rights of any party to an Assumed Contract to payment of any applicable cure amounts in connection with the Sale, nor will the foregoing waive or release any rights to enforce the Subordinated Note Agreement by a Releasing Party which is a party thereto. The Releases set forth in this Section 5.16 shall be binding upon and shall inure to the benefit of the any chapter 7 trustee in the event the chapter 11 cases are converted to Chapter 7.

**5.17.** **Injunction Related to Releases**. Except as provided in the Plan or the Confirmation Order, as of the Effective Date, (i) all Persons that hold, have held, or may hold a Claim or any other Cause of Action,

Litigation Claim, obligation, suit, judgment, damages, debt, right, remedy or liability of any nature whatsoever, relating to any of the Debtors or the Reorganized Debtors or any of their respective assets, property and Estates, that is released pursuant to Section 5.15 or 5.16 of the Plan, (ii) all other parties in interest, and (iii) each of the Related Persons of each of the foregoing entities, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such released Claims or other Causes of Action, Litigation Claims, obligations, suits, judgments, damages, debts, rights, remedies or liabilities, and of all Interests or other rights of a Holder of an equity security or other ownership interest: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (b) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (c) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (d) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Person discharged under Section 5.15 or 5.16 of the Plan; and (e) commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.

## Article VI
## FINAL FEE HEARING AND FINAL DECREE

**6.1.     The Professional Fee Claim Bar Date**.  Any and all applications for the final allowance of Professional Fee Claims shall be Filed and served upon counsel to the Debtors, counsel to the Creditors' Committee, counsel to the Prepetition Agent, the United States Trustee, and all Persons on the Debtors' Bankruptcy Rule 2002 service list on or before the Professional Fee Claim Bar Date.

**6.2.     Final Fee Hearing**.  A hearing on final allowance of Professional Fee Claims (the "**Final Fee Hearing**") shall be held as soon as practicable after the Professional Fee Claim Bar Date.  The Debtors' counsel shall File a notice of the Final Fee Hearing.  Such notice shall be posted on the Noticing Agent Website, and served upon counsel for the Creditors' Committee, all Professionals, the United States Trustee and all parties on the Debtors' Bankruptcy Rule 2002 service list.

**6.3.     Final Decree**.  Subsequent to the Effective Date, the Distribution and the Final Fee Hearing, Debtors' counsel shall File a certification of counsel requesting the entry of the Final Decree.

## Article VII
## REQUEST FOR CONFIRMATION

**7.1.     Request for Confirmation**.  The Debtors request confirmation of this Plan in accordance with section 1129(a) and/or section 1129(b) of the Bankruptcy Code.

*[Remainder of page left intentionally blank]*

IN WITNESS WHEREOF, the Debtors have executed this Plan this 8th day of March, 2011.

Goldcoast Liquidating, LLC
Goldcoast Management Liquidating, LLC

By:      /s/ William G. Taves
Name:      William G. Taves
Title:      Chief Financial Officer

Dated: August __, 2011

MILBANK, TWEED, HADLEY & MCCLOY LLP
Robert Jay Moore (CA Bar No. 77495)
Haig M. Maghakian (CA Bar No. 221954)
Julian I. Gurule (CA Bar No. 252160)
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017-5735
Telephone: 213-892-4000
Facsimile: 213-629-5063
Email: rmoore@milbank.com
     hmaghakian@milbank.com
     jgurule@milbank.com

and

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (DE Bar No. 2436)
Curtis Hehn (DE Bar No. 4264)
919 North Market Street, 17th Floor
P.O. Box 8705
(Courier Route 19801)
Wilmington, DE 19898
Telephone: 302-652-4100
Facsimile: 302-652-4400
E-mail: ljones@pszjlaw.com
     chehn@pszjlaw.com

Counsel for Debtors
and Debtors in Possession